**Daniel J. SHARKEY, Plaintiff,**

v.

**LASMO (AUL LTD.) and Ultramar Corporation, Defendants.**

**No. 94 Civ. 4699(WCC).**

United States District Court,
S.D. New York.

Aug. 3, 1998.

2

Silver Golub & Teitell LLP, Stamford, CT (David S. Golub, Jonathan M. Levine, of counsel), Cuddy & Feder, White Plains, NY (Thomas R. Beirne, of counsel), for Plaintiff.

Robinson Brog Leinwand Greene Genovese & Gluck P.C., New York City (Michael F. Fitzgerald, Adam J. Ableman, of counsel), for Defendant Ultramar Corp.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

On April 9, 1998, a jury returned a verdict in plaintiff's favor against defendant Ultramar Corporation, finding that Ultramar violated the Age Discrimination in Employment Act (the "ADEA") by discriminating against plaintiff on the basis of his age. The jury awarded plaintiff $1,427,200 as damages for his total financial losses. Plaintiff now moves, pursuant to 29 U.S.C. § 626(b), to supplement the legal damages awarded by the jury with post-verdict equitable relief. Specifically, plaintiff seeks an order (1) reinstating him to an appropriate position at Ultramar or, alternatively, front pay, (2) awarding him pension benefits covering the period from his termination to the present, and (3) awarding him prejudgment interest on the jury award.

For the reasons discussed below, the motion is denied in all respects.

### DISCUSSION

I. *The ADEA*

The ADEA, 29 U.S.C. § 621 *et seq.*, was enacted in an effort to eradicate age discrimination in the workplace. *McKennon v.*

*Nashville Banner Publishing Co.,* 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Its remedial measures were designed "to serve as a 'spur or catalyst' to cause employers 'to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges' of discrimination." *Id.* at 358, 115 S.Ct. 879 (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). More specifically, the ADEA's purpose is two-fold: to deter age discrimination and to compensate for injuries caused by such discrimination. *Id.*

 Section 626(b) of the ADEA provides that a district court "shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the ADEA], including without limitation judgments compelling employment, reinstatement or· promotion ...." *See also McKennon,* 513 U.S. at 357–358, 115 S.Ct. 879. This "broad grant of remedial authority" is to be used by the district courts "to fashion remedies designed to ensure that victims of age discrimination are made whole." *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984). The decision to award such relief is within the sound discretion of the district court, and will be reviewed only for abuse of that discretion. *See, e.g., Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1214 (2d Cir.1993).

## II. *Reinstatement*

 Although the ADEA permits a district court, in its discretion, to order reinstatement, such relief may be inappropriate if "the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation." *Whittlesey,* 742 F.2d at 728; *accord Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 168(2d Cir. 1998); *Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125 (2d Cir.1996), *cert. denied,* ——— U.S. ———, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). The Court has witnessed the contentious relationship between the parties throughout this litigation, and finds that reinstatement is not an appropriate remedy. *See, e.g., Kirsch,* 148 F.3d 149, 168; *Green-*

*baum v. Svenska Handelsbanken,* 979 F.Supp. 973, 987 (S.D.N.Y.1997).

## III. *Front Pay and Pension Benefits*

 Under certain circumstances, an equitable award of front pay (compensation for future lost earnings) may be appropriate to effectuate the purposes of the ADEA. *See Dominic v. Consolidated Edison Co. of N.Y.,* 822 F.2d 1249, 1256–57 (2d Cir.1987) (citing *Whittlesey,* 742 F.2d at 728). Compensation for lost pension benefits also "falls within the category of equitable relief." *Geller v. Markham,* 635 F.2d 1027, 1036 (2d Cir.1980). Where reinstatement is inappropriate, these forms of prospective relief may be warranted in order to " 'mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.' " *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1182 (2d Cir.1996) (quoting *Padilla,* 92 F.3d at 125–26).

 The decision to award front pay and other compensation for future losses is in the discretion of the district court. *See Reed,* 95 F.3d at 1182; *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993). In evaluating whether to exercise this discretion, "the district court should determine whether the award will aid in ending illegal discrimination and rectifying the harm it causes." *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 159 (2d Cir.1992) (internal quotation and citation omitted). Under no circumstances should such an award be "unduly speculative." *Id.*

 Front pay and other future benefits may only be awarded where the jury's award is insufficient to make the plaintiff whole for the discrimination he suffered. *See Reed,* 95 F.3d at 1182; *Padilla,* 92 F.3d at 126; *Saulpaugh,* 4 F.3d at 145; *Malarkey,* 983 F.2d at 1214; *Barbano v. Madison County,* 922 F.2d 139, 147 (2d Cir.1990). In this case, the jury's award was specifically designed to make plaintiff whole. On the jury verdict form, the jury awarded plaintiff over $1.4 million "as damages for his total financial losses." At trial, the court carefully

explained to the jury the meaning of that phrase:

> Now, as I explained to you, that is the net amount which you find that he lost as a result of the discriminatory job offer, if you find the offer was, in fact, a violation of the ADEA. In other words, you will determine the amount which he would have received if he had received a comparable nondiscriminatory offer and then worked for such period of time as you find reasonable.

(Trial transcript, April 8, 1998, at 1148–49; *see also id.* at 1150.) More generally, the court instructed the jury:

> In an age discrimination case, damages are for the purpose of putting the plaintiff in the same economic position he would have occupied if the discrimination had not occurred. In other words, the purpose of damages is to make him whole, economically speaking, and to put him in the same position that he would have been put in if a nondiscriminatory job offer had been made to him.

(*Id.* at 1105.) Based on the jury instructions and the language of the verdict form, it is clear that the $1.4 million award reflects the jury's determination as to plaintiff's total financial losses—that is, the amount required to make him whole.

The court agrees that this amount is more than ample to compensate plaintiff for his injury, and will not award an additional amount in front pay or pension benefits. *See, e.g., Greenbaum,* 979 F.Supp. at 987–88 (declining to award front pay where jury award was sufficient to make plaintiff whole); *McIntosh v. Irving Trust Co.,* 873 F.Supp. 872, 878–79 (S.D.N.Y.1995) (same, citing jury instructions); *cf. Saulpaugh,* 4 F.3d at 145 ("The award of front pay is discretionary, and where as here the district court makes a specific finding that an award of back pay was sufficient to make a plaintiff whole, no abuse of discretion can be found").

## IV. *Prejudgment Interest*

"Prejudgment interest ... is 'an element of complete compensation.'" *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (quoting *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987)). In an ADEA case, prejudgment interest is designed to compensate the plaintiff for loss of the use of money plaintiff otherwise would have earned absent the discriminatory action. *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 281 (2d Cir.1987); *see also Clarke v. Frank,* 960 F.2d 1146, 1153–54 (2d Cir.1992) (Title VII).

Whether to award prejudgment interest is within the sound discretion of the district court. *S.E.C v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1476 (2d Cir.1996), *cert. denied,* — U.S. —, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997); *Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund,* 982 F.2d 783, 790 (2d Cir.1992) (citing *Wickham Contracting Co. v. Local Union No. 3, IBEW,* 955 F.2d 831, 834–35 (2d Cir.1992)); *Luciano v. Olsten Corp.,* 912 F.Supp. 663, 676 (E.D.N.Y.1996), *aff'd,* 110 F.3d 210 (2d Cir.1997). In deciding whether to make such an award, the court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham,* 955 F.2d at 834. Although it is ordinarily an abuse of discretion not to include prejudgment interest in a back pay award, *Sands v. Runyon,* 28 F.3d 1323, 1327 (2d Cir.1994); *Saulpaugh,* 4 F.3d at 145, "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff." *Wickham,* 955 F.2d at 834; *accord Commercial Union Assurance Co. v. Milken,* 17 F.3d 608, 614 (2d Cir.1994). Prejudgment interest "should be awarded only in cases where such an award is 'fair, equitable and necessary to compensate the wronged party fully.'" *Mendez,* 982 F.2d at 790 (quoting Wickham, 955 F.2d at 835).

This is clearly an instance in which an award of prejudgment interest would be unjust. Plaintiff retired ten years ago, and at that time was given a $300,000 retirement bonus. In 1991, after receiving pension payments for three years, he was hired back. In

1992, the company moved to Montreal, Canada; at that time, plaintiff was offered a two-year contract at $170,000 per year. When he declined the opportunity to move to Montreal with the company, he was given an $83,000 "tin parachute." He then sued over the perceived inadequacy of the tin parachute, and received an additional $200,000 in settlement—bringing to over three-quarters of a million dollars the amount he had received in the previous four years, despite working for only one of those years.

After plaintiff declined Ultramar's offer of employment in Canada, he made only desultory efforts to find other work, choosing instead to seek relief under the ADEA through this action. The jury, instructed to accord him complete monetary relief and "make him whole," treated him with surprising generosity. It gave him a judgment substantially exceeding the total salary and benefits he could have earned if he had worked to date, deducting nothing for his failure to mitigate his damages by accepting Ultramar's offer of continued employment or by exerting reasonably diligent efforts to find other employment. The judgment, when added to the moneys previously received by plaintiff, brings to well over $2 million the amount he will have been compensated since his voluntary retirement. To say the least, he has been fully compensated for Ultramar's age discrimination against him. There is no reason for the Court to exercise its discretion to compensate him further through equitable relief.

## CONCLUSION

For the reasons stated above, plaintiff's motion for equitable relief is denied.

**SO ORDERED.**